# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| ELLA BROOKE FITZPATRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-CV-326-HAB |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of the Social | ) | |
| Security Administration[1], | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Ella Fitzpatrick's ("Fitzpatrick") appeal of the Social Security Administration's Decision dated December 27, 2017 (the "Decision"). Fitzpatrick filed her Complaint to Review Decision of Commissioner of Social Security Administration (ECF No. 1) on October 12, 2018. Fitzpatrick filed her Opening Brief (ECF No. 14) on March 22, 2019. Defendant Andrew Saul, Commissioner of the Social Security Administration (the "Commissioner"), filed his Memorandum in Support of Commissioner's Decision (ECF No. 20) on July 1, 2019.   On July 17, 2019, Fitzpatrick filed her reply. (ECF No. 21). This matter is now ripe for determination.

## ANALYSIS

### 1.   *Standard of Review*

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial

---

[1] Andrew Saul is now the commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). See also Section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

### 2. *The ALJ's Decision*

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, 3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2009, the alleged onset date. Plaintiff met the insured status requirements of the Social Security Act through March 31, 2014. At step two, the ALJ determined that Plaintiff had the following severe impairments: major depressive disorder, PTSD, unspecific obsessive-compulsive and related disorder, traumatic arthritis, degenerative disc disease in the lumbar spine, right partial rotator cuff tear, and right rotator cuff syndrome/tendonitis. The ALJ further found that Plaintiff

had the following non-severe impairments: fracture in her right arm, osteopenia, prior concussion, and endometriosis.

At step three, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526)." (R. 18–19). At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she can occasionally reach overhead on the right. She can frequently handle and finger on the right. She can occasionally climb ramps or stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She is limited to simple work-related decisions. She is limited to occasional interaction with supervisors and coworkers. She cannot interact with the public. She is limited to tolerating occasional changes in a routine work setting.

(R. 20.)

At step five, the ALJ determined that Plaintiff was unable to perform any past relevant work. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform, and therefore she is not disabled.

**3.** *Subjective Symptoms*

Plaintiff claims that the ALJ mischaracterized her social activities in dismissing her subjective symptoms. The ALJ found that Plaintiff participated in "a variety of social events, including Thanksgiving, kayaking with friends, a birthday dinner, a cookout with a family friend, and a concert." (R. 21–22). The ALJ also stated that Plaintiff "regularly described relationships with boyfriends, including meeting her boyfriend's family on one occasion, and she noted supportive friendships, including a friend who allowed her to stay over for a weekend after the claimant was physically abused by a boyfriend." (R. 21). The ALJ also noted that Plaintiff was able to drive for nine hours after getting into an argument with her boyfriend. The ALJ found that this

4

evidence was not consistent with the allegations of limited social functioning and an inability to get along with others. Plaintiff asserts that this is a gross mischaracterization of her social activities.

While Plaintiff did go kayaking with "a so called friend" in 2016, it was not a positive social experience. (R. 1030). The Commissioner attempts to argue that Plaintiff's difficulties on the kayak trip stemmed from drinking while on psychotropic medication. While this is true, the ALJ fails to discuss this in the Decision, and the Court cannot conduct meaningful review of information the ALJ fails to discuss. The ALJ instead implies that Plaintiff went on a successful kayaking trip with friends. The reality of the situation was far different. Plaintiff's friend left her on the river when "she became a little too friendly with the people she saw on the riverbank after her drinking alcohol." (R. 1030). He went home, and Plaintiff apparently continued kayaking. She was found unresponsive stuck on the bank of the river and ended up in the hospital for two to three days. (R. 1030). Plaintiff did not have a positive social experience kayaking, and her kayaking trip was not indicative of greater social functioning than alleged. Plaintiff began the trip with a friend, but it ended with Plaintiff alone in a hospital. The ALJ mischaracterized Plaintiff's kayaking trip.

The ALJ also found that Plaintiff was able to go on a nine-hour car ride after an argument with her boyfriend. This was also a mischaracterization of the situation. Plaintiff did not simply get into an argument with her boyfriend. Plaintiff and her boyfriend got into a "very heated and ugly argument" wherein Plaintiff was knocked unconscious. (R. 1012). Plaintiff was driven to a hospital by EMS, suffered a concussion, and was taken to a women's shelter after being released from the hospital. She refused to stay at the shelter and requested police presence to go retrieve her belongings from her boyfriend, after which she drove the nine hours back home. As a result of the assault, she suffers from flashbacks, vomiting, and crying. (R. 1012). The ALJ has not explained how an ability to drive home (even nine hours) after an assault is indicative of greater abilities in

social functioning. Instead, the ALJ characterized Plaintiff's violent assault as "an argument" and ignored the gravity of the situation. The ALJ further found that Plaintiff's ability to have a boyfriend was not consistent with social limitations, but he fails to acknowledge that one of the boyfriends was physically abusive. The ALJ also fails to acknowledge that Plaintiff's "supportive friend[]" has a history of verbal abuse towards Plaintiff that resulted in them not speaking for five years, and that this same friend is the one who left her alone on the kayaking trip. (R. 22, 1030).

The medical record reports that Plaintiff has a history of domestic violence. (R. 1025, 1425). Her therapy records from Park Center indicate that she "has been involved in unstable and intense interpersonal relationships" and "has been involved in numerous failed relationship[s]." (R. 1436). The ALJ paints a picture wherein Plaintiff has successful relationships and stable friendships that allow her to go on social outings. In reality, Plaintiff's interpersonal relationships are troubled and at times abusive. The ALJ's version of the facts supports a decision where Plaintiff's subjective symptoms regarding her social functioning are called into question. The medical record, however, supports Plaintiff's statements regarding her limitations in social interactions. The ALJ has mischaracterized Plaintiff's social interactions, and such error requires remand.

The ALJ also found that Plaintiff was capable of living alone. While Plaintiff did technically live alone, the ALJ failed to acknowledge that for at least portions of the record, she lived alone in a supported living environment. (R. 308, 666, 969). While this mischaracterization alone is not enough for a remand, taken in combination with the other mischaracterizations, remand is necessary.

Plaintiff also argues that the ALJ improperly relied on her noncompliance with treatment to discredit her subjective symptoms. The ALJ found that Plaintiff's irregular compliance with medication was inconsistent with her subjective symptoms. While Plaintiff has not always been

100% compliant with her medication, she has continued to participate in therapy. Furthermore, the ALJ's dismissal of her symptoms due to a lack of medication compliance "ignores one of the most serious problems in the treatment of mental illness – the difficulty of keeping patients on their medications." *Spiva v. Astrue*, 628 F.3d 346 (7th Cir. 2010). The Seventh Circuit has held that sporadic compliance with medication and treatment does not necessarily contradict a claimant's subjective symptoms. "[P]eople with serious psychiatric problems are often incapable of taking their prescribed medications consistently." *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011); *Jelinek v. Astrue*, 622 F.3d 805, 814 (7th Cir. 2011) ("ALJs assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference."). The ALJ's Decision does not adequately articulate why he determined that her poor compliance with medication regimes is inconsistent with the level of disability that she alleged.

Plaintiff makes two other arguments regarding medical opinions and the step three evaluation. However, the Court need not address those now, as a proper evaluation of Plaintiff's subjective symptoms and the medical record may alter the rest of the ALJ's decision.

## CONCLUSION

For the foregoing reasons, the Decision is REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED on January 28, 2020.

 s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT